## West Chicago St. R. R. Co. v. Joseph Loftus, by his Next Friend.

1. INSTRUCTIONS — *Technical Inaccuracies, Not Reversible Error, When.*—An instruction containing technical inaccuracies, but which is not in the main calculated to mislead the jury, is not erroneous.

Action in Case, for personal injuries. Trial in the Superior Court of Cook County: the Hon. SAMUEL C. STOUGH, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the October term, 1898. Affirmed. Opinion filed June 12, 1899.

Statement of the Case.—Appellee, a boy about thirteen years of age, engaged in selling newspapers on the streets of Chicago, was injured by being pushed from one of appellant's cars on September 14, 1895, brought suit for his injuries, and on a trial before the Superior Court of Cook County and a jury, recovered a verdict for $2,500, on which judgment was entered, from which this appeal is taken.

The negligence charged is that appellant's conductor, while in charge of its car, and acting within the scope of his employment, while plaintiff was riding upon the car and acting with all due care and diligence for his own safety,

pushed, kicked and knocked the plaintiff from said car while the same was moving, and plaintiff fell to and upon the ground, by means of which he was injured, etc.

It appears from the evidence that plaintiff, between seven and nine o'clock A. M., on the day in question, got upon a train of appellant, two cars, consisting of an electric motor and one trailer, for the purpose of selling a paper to one of the passengers thereon who had called to plaintiff while he stood on the sidewalk near the car tracks; that plaintiff got upon the running board of either the motor or the trailer while the train was stopped for receiving and discharging passengers; that the train started before he had sold his paper, and while it was moving, plaintiff was either pushed from the car by the conductor or in attempting to jump from the car fell and was injured.

The plaintiff testified in part, viz.:

"I was standing on the southwest corner of Lake and Western avenue and the car was going south, and a man on the car called me to buy a paper, and the car stopped, and the passengers was getting on and off the car, and I went to give the man the paper, and the conductor came along and shoved me off, and that's all I remember."

He is corroborated by two eye-witnesses of the accident, Kenney and Lang, who seem to be disinterested and credible.

The conductor of the motor car testified in part, viz.:

"As we were crossing Lake street I was at the trolley cord, at the rear end of the car. Then when the car stopped I stayed right at the trolley cord. When the car started again, I started up the aisle to get the fares. I went up about two seats. There was a newsboy on the left side of the car, and he jumped off of my car when he seen me coming up the aisle. This boy was about at the second seat from the front end of my car. When he jumped off he was in the same place. He was facing south. I was coming from the rear end of the car toward him. He jumped off my car and got off all right, and then he started and jumped on the trail car, and he got upon the footboard all right. I watched the boy just after he left my car and he jumped on the other one, and he got on the footboard and the momentum of the car throwed him with his feet

toward the south and the consequence was he struck on his head when he landed on the pavement."

He also testified that the train was going about five miles an hour when the boy fell, and that he did not strike or push the boy or put his hands on the boy's person.

The conductor of the trail car testified in part, viz.:

" 1 was the conductor on the trail car. We stopped on the north side of Lake; that is, before crossing over. I did not see the boy at any time before the accident happened. I first saw the boy as he was attempting to get on my car. The conductor of the motor car was William Hayen. The motorman was Frank Matthews. It was between seven and eight o'clock. We were going south. We had very few passengers aboard our car. When I first saw the boy it was just before we got to the alley. I saw him try to jump on—about the front seat. My car was an open car with footboard on the side; an aisle through the center. He didn't succeed in getting on; he fell in attempting to. He attempted to get on and missed his hold and fell."
*    *    *    " He made a grab for the handles of the car and missed them, of course. . He made a grab for the grab-irons and fell, and the next instant he was on the ground; just as a person would naturally make a grab, and, for instance, raise their foot like that (illustrating) to get on. I couldn't say whether he got his feet on the footboard or not. He fell with his head toward the north."

He also testified that when plaintiff attempted to jump on, the car was moving, but couldn't say how fast; also, viz.:

" I did not at any time there put my hand upon the boy or push him off. I did not make any threatening gestures toward him. I did not order him off. I did not do anything to make him fall."

The evidence of the conductors is corroborated by two apparently disinterested and credible witnesses.

Among other instructions given for the plaintiff were the following :

" 4. The court instructs the jury that while, as a matter of law, the burden of proof is upon the plaintiff to prove his case by a preponderance of the evidence, still if the jury find that the evidence bearing upon the plaintiff's case preponderates in his favor, although but slightly, it would be sufficient for the jury to find the issues in his favor.

" 6.   The plaintiff holds the affirmative of the issue, or what is called the burden of proof rests upon him, the defendant having denied the charges alleged against it in the declaration.   The plaintiff must satisfy you, by what is called a preponderance of the proof, that the wrong complained of was committed by the servant of the defendant in manner and form as charged in the declaration.   By a preponderance of proof the court does not mean the larger number of witnesses on a given point.   Four or five witnesses may testify to a fact, and a single witness may testify to the contrary, but under such circumstances and in such manner and with such an air and appearance of truth and candor as to make it the more satisfactory or convincing to you that the one witness, with the opportunity of knowing the facts testified to, has told the truth of the matter.   When you are thus satisfied that the truth lies with a single witness or any other number, you are justified in returning a verdict in accordance therewith.   This is what is meant by a preponderance of proof.   It is that character or measure of evidence which carries conviction to your minds."

ALEXANDER SULLIVAN, attorney for appellant; EDWARD J. McARDLE, of counsel.

THOMAS S. HOGAN and MUNSON T. CASE, attorneys for appellee.

MR. PRESIDING JUSTICE WINDES, after making the foregoing statement, delivered the opinion of the court.

It is claimed the verdict is against the law and evidence and the weight of the evidence, and that it was error to give plaintiff's fourth and sixth instructions, as stated above. It is true that there are some differences as to the circumstances and details testified to by the witnesses Kenney and Lang, which tend to weaken the force of their evidence. They need not be set out in detail, as we are of opinion they are insufficient to seriously affect their evidence, and because the weight to be given the evidence of the witnesses was for the jury.   The appellant contends that the plaintiff is wholly unsupported, but we can not say, from a careful reading of the evidence, in the light of the arguments, that

the jury was not justified in believing that of appellee and his witnesses as against that of appellant's witnesses, and in finding that appellee was pushed by the conductor from the car while it was moving. This being our conclusion, it follows, the case was properly submitted to the jury and the verdict should stand, unless there was error in the instruc tions, that being the only other assignment of error argued by appellant.

It is said that the fourth instruction excludes from the con- sideration of the jury all the evidence introduced by appel- lant, because it tells the jury that if they "find that the evidence bearing upon the plaintiff's case preponderates in his favor, although but slightly, it would be sufficient for the jury to find the issues in his favor." We think the in- struction is not fairly open to the criticism made. It was held that there was no valid objection to the same instruc- tion in Taylor v. Folsing, 164 Ill. 332–5. See also W. C. St. R. R. Co. v. Karzalkierwiecz, 75 Ill. App. 240. The sixth instruction of plaintiff is criticised because, it is claimed, it singles out the plaintiff, and tells the jury, in substance, they may find their verdict on his unsupported testimony. We can not assent to this contention. The instruction may as well apply to either of appellant's conductors as to plaintiff.

In N. C. City Ry. Co. v. Gastka, 27 Ill. App. 518–23, this instruction was held not to be erroneous, and this decision was affirmed by the Supreme Court, 128 Ill. 613, the court saying :

" The instructions may contain technical inaccuracies, but, in the main, we regard them as correct. They contain nothing calculated to mislead the jury."

There being, in our opinion, no reversible error in the record, the judgment is affirmed.